# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CARMEN WATSON, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION |
| ) | |
| v. ) | No. 20-2577-KHV |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff appeals the final decision of the Commissioner of Social Security to deny disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq., and supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. For reasons stated below, the Court reverses the decision of the Commissioner and remands this case for further proceedings consistent with this order.

## Procedural Background

On December 30, 2017, plaintiff filed her applications for disability insurance benefits and SSI. On both applications, plaintiff claimed a disability onset date of December 19, 2017. The Social Security Administration ("SSA") denied plaintiff's benefit applications both initially and on reconsideration.

On November 26, 2019, following a video hearing on November 6, 2019, an administrative law judge ("ALJ") concluded that plaintiff was not under a disability as defined in the Social

---

[1] On July 9, 2021, Kilolo Kijakazi was appointed Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for former Commissioner Andrew M. Saul as defendant in this suit.

Security Act and that she was not entitled to benefits.  See Administrative Record (Doc. #11-1) filed March 24, 2021 ("Tr.") at 17–32.  On September 21, 2020, the Appeals Council denied plaintiff's request for review.  Id. at 5–7.  Plaintiff appealed to this Court the final decision of the Commissioner.  The decision of the ALJ stands as the final decision of the Commissioner.  See 42 U.S.C. § 405(g).

**Factual Background**

The following is a brief summary of the factual record.

Plaintiff is 33 years old and alleges that she is disabled because of inflammatory arthritis and chronic fatigue disorder.[2]  Plaintiff has past relevant work as a school bus driver and data entry clerk.  Tr. 30.

**I.   Medical Evidence And Disability Determination Reports**

Between plaintiff's onset date of December 19, 2017 and the ALJ's decision on November 26, 2019, plaintiff visited numerous doctors and specialists and made multiple emergency room visits.  During these visits, plaintiff primarily complained of tender joints, fatigue and pain.

Significantly, on September 7, 2017, Dr. Shirley Wang of the Center for Rheumatic Diseases diagnosed plaintiff with inflammatory polyarthropathy.  Id. at 486.  The examination found tender joints in plaintiff's hands and feet and swollen joints in plaintiff's hands, including in the second, third and fourth joints in her left hand.  Id. at 485.  On January 31, 2018, during plaintiff's appointment for inflammatory polyarthropathy, Dr. Wang further diagnosed plaintiff with rheumatoid arthritis.  Id. at 466.  Dr. Wang's examination found continued swelling in

---

[2]   In her application to the SSA, plaintiff alleged that she could not work because of arthritis, depression, anxiety, anemia, chronic pain, chronic fatigue and Vitamin D deficiency.  Tr. 263.  In her appeal to this Court, plaintiff focuses on inflammatory arthritis and chronic fatigue disorder.

plaintiff's left hand, and Dr. Wang reported that plaintiff had "high inflammation levels in joints" and was very fatigued. Id. at 465–66. By February of 2018, plaintiff was reporting arthritic flare-ups four times a week, causing enough pain and fatigue that some days she reported being immobile. Id. at 491.

Plaintiff's primary care physician prescribed medications to treat plaintiff for anxiety, depression and attention deficit hyperactivity disorder. Id. at 494. On March 19, 2018, psychologist Dr. Todd Schemmel diagnosed plaintiff with moderate major depressive disorder. Id. Dr. Schemmel found that plaintiff had poor attention span and short-term memory but concluded that she could consistently remember simple and intermediate instructions and had the psychological and social capacity to interact with others. Id. at 493–94.

Four medical professionals—Dr. Stanley Hutson, Dr. Judee Bland, Dr. Scott Shafer and Dr. Jan Hunter—provided disability determination reports. Dr. Hutson and Dr. Bland provided disability determination reports at initial determination, while Dr. Shafer and Dr. Hunter provided reports at reconsideration. These disability determination reports are discussed in chronological order.

On March 3, 2018, Dr. Hutson, a psychologist, found that plaintiff "retains sufficient mental capacity to carry out two-step commands with adequate persistence and pace but would struggle with detailed or complex instructions." Id. at 80. Dr. Hutson opined that plaintiff "would benefit from having limited social demand in a work setting" but ultimately concluded that plaintiff could adapt to work. Id.

On April 23, 2018, Dr. Bland determined that plaintiff could occasionally lift or carry 20 pounds; frequently lift or carry ten pounds; stand or walk for about six hours a day; and sit for about six hours a day. Id. at 77. She reported that plaintiff could occasionally climb, balance,

stoop, kneel, crouch and crawl. Id. at 77–78. Dr. Bland found that plaintiff's arthritis was severe, but she expected improvement and stated that "[plaintiff's] condition is not expected to remain severe for 12 months in a row to keep [plaintiff] from working." Id. at 82.

On October 22, 2018, Dr. Shafer, a psychologist, reached the same conclusions as Dr. Hutson. Id. at 133–35. On October 24, 2018, Dr. Hunter found that plaintiff could occasionally lift or carry 20 pounds; frequently lift or carry ten pounds; stand or walk for about six hours a day; and sit for about six hours a day. Id. at 112. She reported that plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl. Id. at 113. Dr. Hunter also found manipulative limitations and reported that plaintiff could frequently, but not always, handle and finger. Id. Dr. Hunter noted that an MRI of plaintiff's back showed a stable disc bulge at L4–5 without significant narrowing. Id. at 114. Dr. Hunter concluded that plaintiff "would reasonably be capable of light [residual functional capacity] by 12 months of duration" with treatment. Id. at 113.

## II.     Plaintiff's Testimony

Plaintiff's primary testimony as to her conditions and abilities came from (1) an SSA Function Report ("Function Report") which she completed and (2) her testimony before the ALJ.

On February 9, 2018, plaintiff completed a Function Report. In that report, plaintiff wrote that she could not work full hours and that her hands would "cramp badly, becoming very stiff [and] painful, making it difficult/unsafe to steer the school bus." Id. at 317. Plaintiff wrote that her legs hurt while working and the pain would spread to her back. Id. She reported that on days when she was unable to work, she spent about 18 hours lying down. Id. at 318. At this time, plaintiff reported living with her sister, Sharon Watson. Id.

Plaintiff wrote that on days when she worked, she would shower and dress; on days when

she could not work, she did not have the energy to dress.  Id.  Plaintiff reported that she would go many days unbathed if she was in a lot of pain and that she rarely had the stamina to wash or comb her hair.  Id.  Plaintiff wrote that on days when she was very fatigued, she would only eat a slice of bread with her medications and that she usually could not stand in a hot kitchen, but she could make a meal for herself once or twice a week.  Id. at 319.  Plaintiff reported that she went outside several days a week and was able to drive.  Id. at 320.  Plaintiff wrote that she could walk "maybe 200 ft." on a flat surface before needing to rest for ten to 15 minutes.  Id. at 322.

On November 6, 2019, plaintiff testified before the ALJ by video conference.  Plaintiff testified that she stopped working as a bus driver because of "back to back" flare-ups of arthritis.  Id. at 44.  Plaintiff testified that specialists diagnosed her with a number of different conditions, and she feels as if her body is "just falling apart."  Id. at 48–49.

Plaintiff testified to her current conditions.  Specifically, plaintiff testified that she has pain that she deals with every day in her back, legs and hands.  Id. at 47.  Plaintiff testified that beyond her daily pain, she continues to suffer arthritic flare-ups that leave her in bed "for days at a time."  Id.  When plaintiff experiences flare-ups, she does not bathe because she cannot get out bed.  Id.  Plaintiff testified that when she can bathe, it may take her an hour to do so.  Id. at 60–61.  Plaintiff testified that she has a flare-up every one or two weeks, but some flare-ups will last for three days.  Id. at 48.  Plaintiff testified that she no longer lives with her sister, but her sister helps her and cooks for her when she can.  Id. at 47.  Plaintiff testified that if she is able to eat, she will try to order out to make it "less of a burden" on her family.  Id.

Plaintiff testified that she has been told that she has lupus, a condition that her paternal relatives have.  Id. at 48–49.  She testified that she is sensitive to heat and cold and that cold makes her everyday pain worse.  Id. at 49.  Plaintiff cannot tell when a flare-up is going to come on.  Id.

5

Once a flare-up starts, she has difficulty breathing, her face swells and she develops a red "lupus butterfly" rash. Id. at 50. Plaintiff testified that physical activity makes her everyday pain worse, but she does not know what causes her flare-ups and can get them even if she has just stayed in the house. Id. at 50–51.

Plaintiff testified about the way her conditions affect her abilities. In particular, plaintiff testified that she could lift 15 or 20 pounds if she had to but "couldn't do it consistently." Id. at 54–55. Plaintiff testified that she can walk for around five minutes at a time without needing a rest, depending on her pace, and that she can walk longer if she walks slowly. Id. at 55. Plaintiff testified that she could not move or handle objects for very long without pain because her hands are always swollen from rheumatoid arthritis. Id. at 65–66. Plaintiff testified that she could not regularly lift levers or handles. Id. at 66.

Plaintiff testified that she cannot complete many household tasks. Id. at 50–53. If she does the dishes, she typically takes two hours because she needs to take three or four breaks. Id. at 51. Plaintiff testified that on days she can get out and do errands, she is in "excruciating pain" after 45 minutes and needs to go home and lie down. Id. at 51–52. Plaintiff testified that flare-ups significantly disrupt her sleep, as she gets an average of four hours of sleep when she has them. Id. at 54. Plaintiff testified that she "hardly ever" cooks now and could not remember the last time she cooked for herself. Id. at 60. Plaintiff testified that she is always worried about having a flare-up. Id.

### III.     Vocational Expert Opinion

At the hearing before the ALJ, a vocational expert testified. The ALJ posed two hypothetical individuals to the vocational expert.

First, the ALJ asked about a hypothetical individual who could lift and carry 20 pounds

occasionally and ten pounds frequently; could stand or walk six hours a day; could sit six hours a day; could frequently balance, but could only occasionally climb, stoop, kneel, crouch and crawl; could frequently handle and finger; could occasionally have exposure to vibration but could never tolerate exposure to unprotected moving mechanical parts or unprotected heights; is mentally able to perform one or two-step simple, routine repetitive tasks involving only simple work-related decisions; and could tolerate occasional interaction with coworkers and supervisors but no interaction with the public. Id. at 62. The vocational expert testified that this hypothetical person could not perform any of plaintiff's past work. Id.

The ALJ then posed a second question, asking if this hypothetical person, with plaintiff's age, education and work experience, could perform other jobs in the national economy. Id. The vocational expert testified that this hypothetical person could perform in a light, unskilled position as a garment bagger, hand bander or dessert cup machine feeder as these positions are described in the Dictionary of Operational Titles. Id. at 62–63. On questioning from plaintiff's attorney, the vocational expert testified that if this hypothetical person missed a day or half day of work each week, that would rule out competitive employment. Id. at 63.

**IV.     ALJ Findings**

On November 6, 2019, the ALJ denied benefits at step five, finding that plaintiff could perform other work. In his order, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since December 19, 2017, the alleged onset date (20 C.F.R. §§ 404.1571, et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: inflammatory arthritis, degenerative disc disease in the lumbar spine, tachycardia, obesity, anxiety, depression and attention deficit disorder/attention deficit hyperactivity disorder (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

7

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, [the ALJ finds] that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) in that she can lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday. The claimant can occasionally climb ramps or stairs; occasionally climb ladders, ropes or scaffolds; can frequently balance; and can occasionally stoop, kneel, crouch and crawl. She can frequently handle and finger. She can occasionally tolerate exposure to vibration, but she can never tolerate exposure to unprotected moving mechanical parts or to unprotected heights. The claimant is able to perform one-to-two step, simple, routine and repetitive tasks, involving only simple work-related decisions with few, if any, workplace changes. Lastly, she can tolerate occasional interaction with coworkers and supervisors, but she can have no interaction with the public.

6. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7. The claimant was born on February 25, 1986 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 92-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 19, 2017, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

Id. at 17–32.

**Standard Of Review**

The Court must determine whether the Commissioner's decision is free from legal error and supported by substantial evidence. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)). It requires "more than a scintilla, but less than a preponderance." Id. (quoting Lax, 489 F.3d at 1084). Evidence is not substantial if it is "overwhelmed by other evidence in the record or constitutes mere conclusion." Grogan v. Barnhart, 399 F.3d 1257, 1261–62 (10th Cir. 2005) (quoting Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992)). To determine if substantial evidence supports the ALJ's decision, the Court will not reweigh the evidence or retry the case, but will examine the record as a whole, including anything that may undercut or detract from the Commissioner's findings. Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).

**Analysis**

Plaintiff bears the burden of proving disability under the Social Security Act. See Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). The Social Security Act defines "disability" as the inability to engage in any substantial gainful activity for at least 12 months due to a medically determinable impairment. See 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is under a disability, the Commissioner applies a five-step sequential evaluation: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) whether the impairment prevents the claimant from continuing her past relevant work; and (5) whether the impairment prevents the claimant from doing any kind of work. See 20 C.F.R. §§ 404.1520(a)(4), 416.920. If the claimant satisfies steps

9

one, two and three, she will automatically be found disabled; if the claimant satisfies steps one and two, but not three, she must satisfy step four. If step four is satisfied, the burden shifts to the Commissioner to establish that the claimant can perform work in the national economy. See Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988).

Here, the ALJ denied benefits at step five, finding that plaintiff can perform other work in the national economy. Plaintiff argues that (1) the ALJ's finding that plaintiff's impairments do not meet the listed impairments for inflammatory arthritis (Listing 14.09) and chronic fatigue (Social Security Ruling 14-1p) is not supported by substantial evidence and (2) the ALJ's residual functional capacity determination ("RFC") is not supported by substantial evidence. Plaintiff asks this Court to reverse the ALJ's decision and direct an award of benefits, or in the alternative remand the case for further fact finding on the issue of disability.

The Court considers each issue in turn.

**I.      Listed Impairments**

At step three, the ALJ must discuss the evidence and explain why he finds that the individual is not disabled. Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996). A summary conclusion that the individual's impairments do not meet or equal any listed impairment "is beyond meaningful judicial review." Id. To show that an impairment or a combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings to support each criterion for the impairment. Lax, 489 F.3d at 1085.

Plaintiff argues that the ALJ erred in finding that her inflammatory arthritis does not meet Listing 14.09 for inflammatory arthritis. Plaintiff also argues that the ALJ erred in not finding that she suffers from chronic fatigue syndrome ("CFS"), as outlined in Social Security Ruling ("SSR") 14-1p.

A.      **Inflammatory Arthritis**

The ALJ addressed Listing 14.09 for inflammatory arthritis.  For Listing 14.09, plaintiff must satisfy one of its four sections: 14.09(A), 14.09(B), 14.09(C) or 14.09(D).[3]  20 C.F.R. pt. 404, subpt. P, app. 1, § 14.09.

Plaintiff claims that the ALJ erred because he failed to address whether she satisfied 14.09(D).  The ALJ concluded that plaintiff did not meet 14.09(A), 14.09(B) or 14.09(C), but did not discuss the evidence supporting this conclusion.  Tr. 21.  The ALJ cited Exhibit 8F in the record, but the Court does not know what information the ALJ intended to reference because Exhibit 8F is the psychiatric report from Dr. Schemmel, which is not related to plaintiff's arthritis.  The ALJ did not mention 14.09(D).

The Court agrees with plaintiff that the ALJ erred by not addressing whether plaintiff satisfied 14.09(D).  Defendant expressly admits that "the ALJ did not specifically address the requirements of section D of Listing 14.09."  Commissioner's Response Brief (Doc. #13) at 7.  Defendant argues that the ALJ did not commit reversible error because, in his analysis of plaintiff's mental impairments for Listing 12.04(B) (Depressive, bipolar and related disorders), he addressed

---

[3]     Listing 14.09(D) provides as follows:

D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

1.      Limitation of activities of daily living.

2.      Limitation in maintaining social functioning.

3.      Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. pt. 404, subpt. P, app. 1, § 14.09(D).

11

requirements similar to Listing 14.09(D).  Id. at 7–10.  Some overlap exists between the requirements for Listing 14.09(D) and Listing 12.04(B).  Compare 20 C.F.R. pt. 404, subpt. P, app. 1 § 14.09(D) (categories: limitations in activities of daily living, social functioning, and completing tasks in a timely manner; limitations due to deficiencies in concentration, persistence or pace) with 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04(B) (categories: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself).  However, by failing to address Listing 14.09(D) or engage in a meaningful analysis of Listing 14.09 broadly, the ALJ's analysis does not touch on all of Listing 14.09(D)'s relevant criteria, such as limitations on completing tasks in a timely manner.  Further, without suggesting how the ALJ should resolve the issue on remand, a cursory review of the record suggests that plaintiff may satisfy section D.  For instance, plaintiff's Function Report and testimony show that she struggles to complete tasks in a timely manner due to pain and fatigue.  See, e.g., Tr. 51, 60–61 (doing dishes takes two hours and bathing takes an hour instead of 20 minutes).  Accordingly, this error was not harmless.

Because the ALJ failed to address section D of Listing 14.09, the Court must remand to the Commissioner to determine whether plaintiff has an impairment or combination of impairments that meets or equals the severity of Listing 14.09.

### B. Chronic Fatigue Syndrome

Plaintiff also argues that the ALJ erred by not finding that she suffered from the medically determinable impairment of CFS.  See SSR 14-1p, 2014 WL 1371245.  SSR 14-1p states that in order to establish CFS as a medically determinable impairment, an acceptable medical source must diagnose plaintiff with CFS.  Id.  ("A person can establish that he or she has [a medically determinable impairment] of CFS by providing appropriate evidence from an acceptable medical

source. A licensed physician (a medical or osteopathic doctor) is the only acceptable medical source who can provide such evidence. . . . We will find that a person has [a medically determinable impairment] of CFS if a licensed physician diagnosed CFS, and this diagnosis is not inconsistent with the other evidence in the person's case record.").

Plaintiff argues that she "reported that she is too fatigued to work or even care for herself" yet the ALJ "made no findings regarding [CFS] despite significant evidence throughout the record that one of [her] primary complaints and impairments was fatigue." Plaintiff's Social Security Brief (Doc. #12) at 21–22. Fatigue is different than a medical diagnosis of CFS, however, and the record does not contain any evidence of an acceptable medical source diagnosing plaintiff with CFS. The ALJ only considers impairments that are medically determinable, i.e., are established by objective medical evidence from an acceptable medical source. 20 C.F.R. § 416.921. Plaintiff's subjective complaints of fatigue are insufficient to establish CFS as the ALJ cannot use plaintiff's "statement of symptoms, a diagnosis, or a medical opinion" to establish the existence of an impairment. Id. The ALJ therefore did not err by not addressing CFS.

## II.     Residual Functional Capacity

The RFC assessment must describe how the evidence supports the ALJ's conclusion about plaintiff's impairments and must cite medical facts and nonmedical evidence. Social Security Ruling 96-8p, 1996 WL 374184, at *2, 7 (July 2, 1996). As part of the narrative discussion of the RFC assessment, the ALJ must explain how he considered and resolved any material inconsistencies or ambiguities in the evidence. Id. at *7. In cases where symptoms (including pain) are alleged, the RFC assessment must analyze the objective medical evidence and the individual's complaints of pain, resolve inconsistencies in the evidence and set forth a logical explanation of how the symptoms affect the individual's ability to work. Id.; see also Clifton, 79

F.3d at 1009–10.

### A. Mental Impairments

In determining plaintiff's RFC for mental impairments, the ALJ gave great weight to the opinions of Dr. Hutson and Dr. Shafer. The ALJ found that their opinions regarding plaintiff's limitations and abilities were persuasive because they were consistent[4] and supported by the medical evidence in the record. Tr. 28–29. The ALJ also found that their opinions generally were consistent with Dr. Schemmel's findings from his mental status examination of plaintiff. Id. Specifically, the ALJ noted how the doctors' determination that plaintiff had limitations in performing more complex tasks was in line with plaintiff's poor performance in concentration and attention span in her examination. Id.

Plaintiff argues that the ALJ's finding that she can have occasional interaction with coworkers and supervisors is "completely contrary" to the evidence which the ALJ relied on from Dr. Schemmel. Plaintiff's Social Security Brief (Doc. #12) at 24. Plaintiff argues that Dr. Schemmel's evidence shows that she is "incapable of cooperating with authority figures, even with healthcare professionals for her own benefit." Id. The report that plaintiff cites, however, states that plaintiff's demeanor and behavior suggest that she is "capable of interacting with others (i.e. public, coworkers, supervisors)." Tr. 494. The Court finds no subsequent report in the record where Dr. Schemmel gives a different analysis.

The Court further finds that the ALJ sufficiently discussed the medical and nonmedical evidence in the record, including the reports of Dr. Hutson and Dr. Shafer, and explained that

---

[4] The fact that the ALJ did not address how their reports match verbatim, with Dr. Shafer's report appearing to copy Dr. Hutson's report, gives the Court pause. However, the Court finds that the ALJ's determination is supported by substantial evidence and does not address this issue further.

"[plaintiff's] descriptions of her daily activities are not limited to the extent one would expect to associate with disabling mental impairments." Id. at 20–25. The Court therefore finds that substantial evidence supports the ALJ's RFC determination as to plaintiff's mental impairments.

### B.   Physical Impairments

In determining plaintiff's RFC for physical impairments, the ALJ gave more weight to plaintiff's 2018 Function Report than to plaintiff's 2019 in-court testimony about the intensity and limiting effects of her symptoms. Id. at 24. The ALJ found that plaintiff's 2018 Function Report "admits" that plaintiff can independently bathe, dress, maintain personal hygiene and feed herself, even though plaintiff testified in 2019 that she experiences weekly flare-ups, cannot cook for herself and cannot walk more than five minutes at a time. Id. The ALJ concluded that while plaintiff may not be able to engage in all of her past activities and may take longer to perform a task than she used to, she is "more active than [she] would be if all her allegations were consistent." Id. at 24–25.

The ALJ overall gave greater weight to plaintiff's older medical records, especially the prior administrative medical findings from Dr. Bland and Dr. Hunter. Id. at 25. The ALJ noted that while plaintiff's testimony in November of 2019 alleges disabling limitations due to inflammatory arthritis, her appointment in January of 2018 showed continued swelling only in the three joints on plaintiff's left hand but "no swelling, tenderness, or limitation in the remaining twenty-five joints examined." Id. The ALJ found that the "conservative nature and limited amount of treatment" plaintiff has undergone do not support her allegations of disability. Id. In particular, the ALJ opined that plaintiff's medications for long-term joint pain were "conservative treatment modalities." Id. The ALJ also found that plaintiff's MRI from July of 2018 did not demonstrate disabling functional limitations. Id. The ALJ concluded that while plaintiff may have joint and

15

back pain, "the pattern of clinical findings and the conservative level of treatment she has received does not support her allegations of disability." Id. at 26.

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ relied on "stale" evidence for her severe arthritis, a degenerative disease. Plaintiff's Social Security Brief (Doc. #12) at 23. Indeed, more than a year passed between the dates that Dr. Bland and Dr. Hunter provided disability determination reports and the date of the ALJ hearing, and more than 18 months passed between the date plaintiff submitted her Function Report and the date of the ALJ hearing. Plaintiff also argues that the ALJ believed plaintiff's reports only when they "fit his opinion of the case." Id. at 23–24. Plaintiff points out that the ALJ relied on the Function Report to support his determination that plaintiff can perform daily activities but disregarded any information from the same report that did not support his conclusions. Id. For instance, the ALJ referenced the Function Report to show that plaintiff can shower, dress and eat but ignored her report that she was able to do those activities only some days and spent 18 hours lying down on flare-up days. Id.

The Court finds that substantial evidence does not support the ALJ's RFC analysis as to plaintiff's physical impairments. First, the ALJ did not explain why he gave the opinions of Dr. Bland and Dr. Hunter more weight when (1) they stated that plaintiff's severe arthritis would improve within 12 months and (2) at the ALJ hearing, more than a year after the disability reports, plaintiff still was being treated at a similar level and reported that her condition had worsened. Because plaintiff's arthritis is central to her disability claim, the ALJ's failure to reconcile the previous disability reports with plaintiff's continued condition was in error.

Second, while the ALJ considered medical evidence (including the examinations of plaintiff's joints, the MRIs of plaintiff's spine and medical reports showing that plaintiff had

16

normal gait and range of motion), he relied heavily on the daily activities which plaintiff included in her 2018 Function Report to support his finding that plaintiff did not have significant physical limitations. In particular, the ALJ pointed to plaintiff's report that she could bathe, dress and feed herself. However, the ALJ failed to address plaintiff's report in that same Function Report that she sometimes could not bathe for days or cook for most days of the week. Additionally, the ALJ did not explain why he accepted plaintiff's statements in her Function Report of February, 2018, showing she was able to perform some tasks—but rejected her statements at the hearing in November of 2019 regarding her abilities. See, e.g., Lawton v. Barnhart, 121 F. App'x 364, 375 (10th Cir. 2005) (reversing where ALJ did not explain why he rejected doctor's opinion about claimant's hand limitations but accepted doctor's opinion about claimant's work ability).

Based on plaintiff's level of treatment, the ALJ also rejected plaintiff's allegations of disabling limitations. The ALJ found that plaintiff's treatment had been limited and concluded that she was maintained on "conservative treatment modalities of Soma and Norco"[5] for joint pain. Tr. 25. The ALJ did not explain, however, why those are conservative treatments in a way that the Court can meaningfully review. Moreover, while the ALJ may consider daily activities in determining credibility of testimony regarding pain or limitations, "the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." Tate v. Colvin, No. 15-4870-SAC, 2016 WL 4679942, at *2 (D. Kan. Sept. 7, 2016) (fact that plaintiff prepared meals, ran errands, cared for a dog, cared for personal hygiene, did simple housework, drove a car and shopped did not establish that plaintiff could work at competitive level over eight-hour day). In short, the ALJ's determination regarding

---

[5] From the record, Soma and Norco appear to be medications.

plaintiff's physical limitations is not supported by substantial evidence because he failed to explain why he accepted some of plaintiff's statements regarding her abilities but not others.

Because the ALJ's RFC determination is not supported by substantial evidence, his determination that plaintiff is capable of other work is likewise unsupported on this record. In addition, the ALJ failed to address the issue of absenteeism at step five. The ALJ cites the testimony of the vocational expert but does not address her testimony about how missing a day or half day of work from the jobs she listed would rule out competitive employment. The ALJ does not explain how plaintiff could avoid excessive absences due to fatigue and pain or address her history of absences from her previous job due to pain and fatigue.

In light of the aforementioned findings, the Court must remand to the Commissioner to determine whether (1) plaintiff has an impairment or combination of impairments that meets or equals the severity of Listing 14.09 for inflammatory arthritis and (2) plaintiff retains the residual functional capacity to perform substantial gainful activities in light of her physical limitations.

**IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **REVERSED and REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 26th day of August, 2021 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge